[Civ. No. 14951.   Second Dist., Div. Three.   Jan. 29, 1946.]

Guardianship of JUNE CLYDE RILEY, a Minor.   ERA BLOCKER RILEY, Respondent, v. JOSEPHINE HAWKS, Appellant.

Emanuel & Klein and A. Arnold Klein for Appellant.

Herlihy & Herlihy and Katherine Adams Stoll for Respondent.

DESMOND, P. J.—Josephine Hawks, guardian of the minor, June Clyde Riley, appeals from "(a) The Judgment and Order Removing Guardian, Revoking Letters of Guardianship, Terminating Guardianship and Restoring Custody of Child to Mother; (b) The Judgment and Order Vacating, Annulling and Setting Aside Order Appointing Guardian, and Revoking Letters of Guardianship."

On November 23, 1943, appellant was appointed by Honorable Thomas C. Gould, Judge of the Superior Court of Los Angeles County, guardian of the person of June, then aged seven years and having no estate. The appointment was made with the consent of June's mother, Era Blocker Riley, because she and the child wished that June might attend the Thirty-Second Street School in the city of Los Angeles. Mrs. Riley had been unable to find living quarters near that school. Appellant, who lived in that particular school district, had known June and her mother in Oklahoma prior to her marriage to Raymond Riley, the present stepfather of the child. She had become interested in June because of her precocity and offered to let the little girl live with her so she could attend the Thirty-Second Street School. Mrs. Riley testified that prior to her signing the consent and nomination of the appellant, the latter had said that such action "would be better for her to enroll June in school; that she didn't have authority to do that; that it would be no different, it was just a paper that she could take June to school and enroll her in school."

Approximately four months later and on March 16, 1944, Mrs. Riley sought the removal of appellant and in her petition alleged that the guardian was *"incapable of suitably performing her duties as guardian"* because she was not related to the minor by blood or marriage, she was an unmarried woman approximately 48 years of age, that she did not own a home or real property, that she had no regular or steady source of income and that no financial advantage was to be gained by her acting as guardian. The petition further alleged that at

the time the mother consented to the appointment she was unrepresented by counsel and had no "comprehension or understanding of the legal consequences of such act, and was acting under a mistake of law and fact as to the purport of her consent and of the appointment of Josephine Hawks as Guardian of the person of said child." The prayer merely asked that "Josephine Hawks be removed as the Guardian of the person of the minor herein." Simultaneously with the filing of this petition for removal, another petition [not included in the record] was filed by the aunt and uncle of the minor, Mr. and Mrs. Louie Blocker, asking that they be appointed guardians in the place of Miss Hawks, which request was accompanied by a consent signed by the mother. These two petitions, together with objections thereto, came on for hearing before Judge John Beardsley, and on April 12, 1944, he rendered judgment in favor of the guardian, the judgment reading, in part, that the mother "take nothing against Josephine Hawks, Guardian for said minor June Clyde Riley, by her petition for removal of said guardian, and that said petition be and the same is hereby denied." The court also, at the same time, dismissed the petition of Louie and Dorothy Blocker. No findings were made in these proceedings, the same having been waived by all parties. Almost immediately thereafter and in the month of April, appellant removed June from Los Angeles County and placed her in a school at Ojai, and in the following month of August petitioned the court for an order authorizing her to remove her ward to the State of Vermont for the purpose of attending the Hickory Ridge School at Putney. This petition came on for hearing simultaneously with two filed by Mrs. Riley, one asking the court to vacate the order by which appellant was appointed, the other seeking her removal as guardian.

This second petition for removal alleged as a ground therefor that there was "no necessity for a guardianship" since the mother of the child and her stepfather were "well able to care for, educate and provide for the said child." This petition also realleged the circumstances pertaining to the appointment, stating that June's mother had no comprehension or understanding of the legal consequences of her act and was acting under a mistake of law and fact, all as set forth in the original petition for removal. In addition, it alleged that the guardian was "incapable of suitably performing her duties"

as guardian since she had "demonstrated an unreasonable and unjustified antagonism" towards the members of June's family in failing and refusing to permit the mother and other members of the family to see her or to permit June to visit with her family. Similar allegations appeared in the petition to vacate. The guardian filed general denials to both these petitions and alleged that the mother was "not a suitable, fit or proper person to have the custody and care of said minor child" and that it would "be for the best interest of said minor child that the guardianship now existing remain in full force and effect," and, in addition, raised the affirmative defense of *res judicata* based upon Judge Beardsley's order of April 12, 1944.

Pursuant to stipulation entered into between counsel for the parties, the three petitions were consolidated and heard by Judge Thomas C. Gould, who, as previously stated, made the original appointment. He found in favor of the mother on her petitions. Findings of fact and conclusions of law were filed and judgments entered accordingly.

The court's findings on the second petition for removal were that the mother had executed the consent "with the understanding that the proposed guardianship would be temporary in nature," that she "could have custody of her child whenever she wished," and that she was "not an unfit or improper person" to have custody of her child, the court concluding therefrom that it was no longer necessary that the minor be under guardianship and that "the Petition of Era Blocker Riley for Removal of Josephine Hawks as Guardian of the Person of the above named Minor Child should be granted, and the objections of Josephine Hawks to said Petition should be overruled, and the Letters of Guardianship heretofore issued to the said Josephine Hawks should be revoked, and the guardianship of the above named Minor Child should be terminated and custody of said child restored to Era Blocker Riley, her natural mother."

As one of her grounds of appeal appellant urges that the trial court erred in failing to make a finding on the issue of res judicata, there being "ample and sufficient evidence on that issue of res judicata to support a finding in Appellant's favor." She argues that the issues presented in the second petition for removal and the petition to vacate "were identically the same" as those determined by the court's order of

April 12, 1944, and were "predicated on exactly the same allegations of fact." A careful analysis of the first petition for removal and the second petition for removal, however, clearly indicates not only that the two petitions were based upon different "causes" for removal, but that certain facts pleaded in the second petition, subsequently established by the evidence, were based upon circumstances which had arisen after the hearing on the first petition, namely, the refusal of the guardian to permit the child to visit her parents or the parents to visit her, the "unreasonable and unjustified antagonism" on the part of. the guardian towards members of the minor's family, the removal of the minor out of the county to a school in Ventura County, which act prevented the mother, then pregnant, from visiting with her child, and the request of the guardian to remove the minor from the State of California. These were new matters which occurred after the first hearing. "The doctrine of *res judicata* cannot apply to successive applications for guardianship of minors to the extent of precluding the court, upon the later application, from a consideration of such circumstances as may have occurred since the rendition of the prior order." (*Guardianship of Snowball* (1909), 156 Cal. 240, 242 [104 P. 444] ; *Guardianship of Case* (1943), 57 Cal.App.2d 844, 847 [135 P.2d 681].) The ground urged for removal of the guardian in the first petition was based upon subdivision 3, section 1580 of the Probate Code, i.e., that the guardian was incapable of suitably performing her duties, while the principal ground urged for removal in the second petition was based upon subdivision 8 of that section, "When it is no longer necessary that the ward should be under guardianship." The question of the mother's fitness was never in issue at the hearing on the first petition for removal, since there was then pending also the petition of Mr. and Mrs. Blocker to be appointed guardians in the place and stead of Josephine Hawks, which petition had the consent and approval of the mother. It is apparent, therefore, that at that time the mother was not seeking custody of the child.

Appellant takes the position that Judge Beardsley, having made no specific findings upon that hearing, found by implication that "Respondent, even though the child's parent, was not a fit and proper person to have her custody." But it has been established that before a court "can deprive the mother of her right to the minor's custody and give her into the charge of strangers, there must be a finding that the

mother is an unfit person to have the custody of her child'' (*Stever* v. *Stever* (1936), 6 Cal.2d 166, 170 [56 P.2d 1229]).

█ Since the probate court retains continuing supervisory jurisdiction over guardianship matters, the removal of a guardian for any of the reasons specified in the code (Prob. Code, § 1580) rests within the broad discretion of the court, and where, as in the instant case, the court found that the mother was a fit and proper person and concluded that the guardianship was no longer necessary, the court properly removed the guardian and restored the custody of the child to her mother.

█ Under these circumstances, it is unnecessary to discuss the points which have been raised by appellant, and which we have considered, in connection with the appeal from the court's decision on the petition to vacate. The questions raised by that appeal have become moot, in our opinion, in view of our determination to affirm the judgment of removal. The ultimate objects sought under the petition to vacate were the same as those accomplished by the petition for removal, namely, termination of the guardianship and restoration of the custody of the minor child to her mother.

The appeal from the judgment vacating the appointment of appellant as guardian is ordered dismissed. The judgment removing her is affirmed.

Shinn, J., and Wood, J., concurred.